UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIUS BUCKLEY #449071,

        Plaintiff,                                        Hon. Hala Y. Jarbou

v.                                                      Case No. 1:25-cv-470

MDOC CORRECTONS OFFICERS
FINNEY, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility, initiated this action under 42 U.S.C. § 1983 through counsel on April 26, 2025, against MDOC Corrections Officers (CO) Unknown Finney, Sprague, Jones, Proctor, Lien, Fleck, and Dobias based on events that occurred at the Richard A. Handlon Correctional Facility (MTU) in August of 2023. Plaintiff sues COs Finney, Sprague, Jones, and Fleck for retaliation in violation of the First Amendment and COs Jones, Dobias, and Lien for excessive force in violation of the Eighth Amendment. (ECF No. 1 at PageID.9–11.)

        Presently before me is Defendants' Motion to Dismiss (ECF No. 10), which is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED IN PART AND DENIED IN PART.**

**I. Background**

        Plaintiff alleges that on August 23, 2023, while confined at MTU, he published an article on Prisonreports.org that was critical of the MDOC and its COs at MTU. More specifically, Plaintiff's article criticized certain COs who were "power-drunk" and wrote false misconduct

tickets for violations of prison rules, including low-level, petty violations. (*Id.* at PageID.2.) The article mentioned CO Sprague in particular, noting that "power-drunk" Michigan Reformatory COs had arrived at MTU and one of them, Sprague, was removed from the Calvin College unit and placed in Plaintiff's unit due to his "obsessive ticket-writing behavior." (*Id.* at PageID.3.) The article also described Sprague's proclivity for writing "petty tickets," sometimes in retaliation against prisoners who spoke to a certain female officer with whom Sprague was rumored to have a relationship. (*Id.*) The article also mentioned another CO, whom Sprague had sent to "shake [] down" Plaintiff's cell. (*Id.*)

Plaintiff alleges, on information and belief, that COs who interacted with him were aware of his article and had discussed it with each other. He further alleges that "[a]t one point," CO Jones told Plaintiff that he had read his article. Plaintiff alleges that two other unidentified non-Defendant COs also told him they had read his article. (*Id.*)

On August 24, 2023—one day after his article was published—CO Sprague and non-Defendant CO Wayland moved Plaintiff unexpectedly from his cell in the college ("C") unit to a different cell in "B" unit, which was not a college unit and was nicknamed "the hood." When Plaintiff asked why he was being moved, CO Wayland mentioned that he read an article Plaintiff had written, and CO Sprague said, while smirking, "Don't worry about it, I've got a spot for you." (*Id.*) The officers then placed Plaintiff in cell B-10 with prisoner Perry, who had various mental health issues and a history of violently assaulting, and possibly murdering, his previous cellmates. (*Id.* at PageID.3–4.) Plaintiff alleges that he was unaware of prisoner Perry's reputation at the time he was moved into cell B-10, although he asserts that officers at MTU frequently house prisoners with violent cellmates as a means of punishing them for various violations or perceived transgressions. (*Id.* at PageID.4.)

Plaintiff alleges that after spending a few nights being hit by Perry while sleeping, he spoke to various officers about his concern for his safety, but he was not moved. Plaintiff mentioned these concerns to CO Finney and asked to be moved to a different cell, but Finney denied his request and said that "he didn't care" that Perry was hitting Plaintiff in his sleep. Finney also told Plaintiff that he didn't care whether or not Plaintiff and Perry killed each other. (*Id.* at PageID.4, 8.) Plaintiff also asked CO Sprague to be moved to a different cell but Sprague told Plaintiff that he "wasn't going to move him." (*Id.* at PageID.4.) Plaintiff also told non-Defendant CO Handsworth and CO Jones that he did not feel safe in his cell with Perry. (*Id.*)

On August 30, 2023, after about a week in the same cell with Perry, Perry attacked Plaintiff in the middle of the night by striking him with a padlock wrapped around a belt, causing Plaintiff visible physical injuries, including an open wound on his head. Plaintiff alleges that he reported the incident to the COs on the next shift, including CO Jones, who blamed Plaintiff for the altercation despite evidence to the contrary, including his head wound. Plaintiff alleges that CO Jones did not take pictures of his injuries as required by MDOC policy because he claimed that his camera was "broken." (*Id.* at PageID.4–5.) Plaintiff also alleges that Jones taunted him in front of two other officers who had arrived to determine what had occurred, asking Plaintiff if he and Perry "went all the way" together. (*Id.* at PageID.5.) CO Jones, along with COs Dobias and Lien, who had arrived at the cell, then handcuffed Plaintiff and placed him in a segregation shower to prepare him for transfer to solitary confinement. (*Id.*)

Plaintiff alleges that five officers in full riot gear and gas masks, including COs Dobias, Lien, and Jones, marched single file towards the shower where Plaintiff was standing. By that time Plaintiff had managed to move his still-handcuffed hands to his front. (*Id.*) Despite the handcuffs, the officers ordered Plaintiff to remove his clothing and threatened him with misconducts if he did

not comply. Plaintiff told COs Dobias, Lien, and Jones that he could not remove his clothing due to the handcuffs, but the officers again told him, "you need to strip your clothes off." (*Id.*) Plaintiff responded, "I don't understand." (*Id.* at PageID.5.) A few minutes later, after the officers told Plaintiff that he had "one last chance," the officers pepper-sprayed Plaintiff for several seconds, causing him to crumple to the floor in agony. A short time later, the officers administered a second burst of pepper spray at Plaintiff while continuing to order him to remove his clothing. Eventually, over several minutes, Plaintiff succeeded in removing his clothing and passing it to the officers. After being permitted to briefly rinse off in the shower, Plaintiff was taken to solitary confinement. (*Id.*)

While in solitary confinement, Plaintiff received two misconduct tickets, one issued by CO Dobias based on Plaintiff's alleged attack of Perry, and one based on allegations by COs Dobias, Lien, Jones, and Proctor regarding Plaintiff's alleged refusal to follow orders to remove his clothes in the segregation shower. (*Id.* at PageID.6–7.) In response to Defendants Sprague, Finney, and Fleck's refusals to move Plaintiff out of the cell with Perry, resulting in the assault by Perry, being subjected to chemical spray in the shower, and CO Jones's derogatory and inappropriate responses to Perry's attack, Plaintiff filed three grievances, all of which were denied at all steps of the grievance process. (*Id.* at PageID.7–8.)

## II. Motion Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted). As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

### III. Discussion

Plaintiff alleges that Defendants Sprague, Finney, Fleck, and Jones retaliated against him in violation of the First Amendment by moving him into, and refusing to move him from, a cell with another prisoner with a history of violence towards his cellmates in response to Plaintiff's article published on Prisonreports.org that was critical of MTU officers, including CO Sprague. (*Id.* at PageID.9–10.) Plaintiff further contends that Defendants Jones, Dobias, and Lien violated the Eighth Amendment by using pepper spray on Plaintiff for failing to comply with a nearly impossible task of removing his clothes while his hands were cuffed behind his back.[1] (*Id.* at PageID.10–11.)

---

[1] Plaintiff's complaint contains contradictory allegations regarding whether Plaintiff's hands were in front or in back of him. In paragraph 30, Plaintiff alleges that "[h]e had managed to move his

5

### A. Official Capacity Claims

Defendants contend that Plaintiff's official capacity claims for damages are subject to dismissal because they are barred by the Eleventh Amendment. Plaintiff's failure to respond to this argument constitutes a waiver of any response Plaintiff might have had to this issue. *See AK v. Behavioral Health Sys., Inc.*, 382 F. Supp. 3d 772, 774 (M.D. Tenn. 2019) ("[W]hen a party fails to respond to an argument, that argument is generally deemed to be unopposed and the proposition conceded"); *Gomery v. Continental Cas. Co.*, No. 1:13-cv-947, 2014 WL 4209648, at *4 (W.D. Mich. Aug. 25, 2014) ("Plaintiffs' failure to respond to Defendant's business-enterprise-exclusion argument amounts to a waiver of their argument on the issue and a fatal omission in this case.") (citing, among others, *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567 (6th Cir. 2013) (recognizing that the plaintiff had waived a claim by failing to respond to or refute arguments made by the defendants in the district court)). In any event, it is well established that official capacity damage claims against state officials are barred by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Thus, the official capacity claims must be dismissed.

### B. Retaliation Claims

To establish his retaliation claim against each Defendant, Plaintiff must prove the following elements: (1) he engaged in protected conduct; (2) the defendant took an adverse action against

---

hands, still handcuffed, to his front," (ECF No. 1 at PageID.5), while in paragraphs 61 and 62 Plaintiff alleges that Defendants pepper-sprayed him for failing to comply "with a nearly impossible task"—removing his clothes with his "hands . . . cuffed behind." (*Id.* at PageID.10.) Pursuant to the October 30, 2025 Order (ECF No. 31), I may consider the video only "to the extent that it blatantly contradicts or utterly discredits the complaint." (*Id.* at PageID.158.) Although not material to Defendants' arguments in support of their motion to dismiss, I note that the video evidence, which clearly shows Plaintiff's hands in front of him while he is in the segregation shower, blatantly contradicts Plaintiff's allegation that hands were cuffed behind him.

him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Plaintiff must allege facts establishing all of the elements of his retaliation claim as to each Defendant. *See Heyne v. Metropolitan Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (internal quotation marks omitted)).

### 1. Protected Conduct

Defendants do not dispute that Plaintiff has adequately alleged the first element of his claim against each of them. That is, Plaintiff's online article regarding COs' misconduct-writing activity at MTU constituted protected conduct under the First Amendment. *See Crawford-El v. Britton*, 93 F.3d 813, 825 (D.C. Cir. 1996), *vacated on other grounds by* 523 U.S. 574 (1998) (prisoner's communications to the press critical of prison administration was protected activity under the First Amendment).

### 2. Adverse Action

To meet his burden on this element, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

7

Based on my review of the complaint, two adverse actions are at issue. First, both parties recognize that Plaintiff's transfer to Perry's cell could amount to adverse action. While the Sixth Circuit has observed that "[c]ell assignments are a normal part of prison life, and thus typically do not amount to an adverse action," *LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013), "extraordinary circumstances" might transform a cell assignment into adverse action, such as where the plaintiff's cellmate is mentally ill or otherwise presents a danger to the plaintiff. *Id.* Here, the complaint presents "extraordinary circumstances," in that prisoner Perry allegedly had an assaultive history towards his prior cellmates and might have even murdered one. (ECF No. 1 at PageID.4.) Defendants suggest that the transfer cannot be considered adverse action because the complaint contains "no non-speculative allegation to support the conclusion that any defendant knew Perry would assault Plaintiff." (ECF No. 11 at PageID.50.) But knowledge that harm was certain, or even likely, to occur is not required. As the Sixth Circuit observed in *LaFountain*, "[a]lthough defendants are not responsible for adverse actions that they do not cause, they are responsible for 'those consequences that inextricably follow from [their] alleged retaliatory conduct[.]'" *Id.* (quoting *Siggers–El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005)). Thus, for purposes of a retaliation claim, if a defendant houses a plaintiff with a cellmate known to be violent or mentally ill, and harm results to the plaintiff, the defendant will be liable for those consequences even if the defendant did not know for a certainty that harm would occur.

Because CO Sprague is the only Defendant who played a part in the transfer, Defendants Jones, Finney, and Fleck cannot be held liable for retaliation based on the transfer. *Id.* Even so, Plaintiff alleges that Defendants Finney, Fleck, and Jones retaliated by refusing to move Plaintiff despite his complaints about Perry. Such inaction can also amount to adverse action. *Id.* (holding

that the plaintiff's allegation that the defendants' refusal of his requests to be moved from a cell with a mentally-ill cellmate demonstrated adverse action).[2]

To the extent Plaintiff alleges that Defendants retaliated against him by making false and misleading statements that resulted in the denial of his grievances, I find that that activity does not amount to adverse action because it would not deter a prisoner of ordinary firmness from exercising his constitutional rights. *See Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim).

### 3. Causal Connection

Last, Plaintiff must allege sufficient facts showing that each Defendant took an adverse action against Plaintiff because of his article published on Prisonreports.org.

#### a. Defendant Sprague

Defendants concede that Plaintiff has alleged sufficient facts—Sprague's statement, "Don't worry about it, I've got a spot for you[,]" coupled with the non-Defendant officer's mention of reading Plaintiff's article—to establish that Sprague was aware of Plaintiff's protected conduct, but they argue that the complaint lacks sufficient facts to show that Sprague was aware of Perry's

---

[2] Although Plaintiff mentions two misconduct reports in his complaint and suggests that they were false, it appears that Plaintiff is not alleging that the reports constituted adverse action for purposes of his retaliation claim. (ECF No. 1 at PageID.6–7; ECF No. 17 at PageID.79.) Indeed, CO Dobias, who is not subject to the retaliation claim, wrote the misconduct report blaming Plaintiff for the incident with Perry. (ECF No. 1 at PageID.6.)

assaultive history at the time of the cell transfer. Defendants note that the complaint's only allegation on this front is the conclusory statement that "the COs were well aware" of Perry's mental illness and assaultive history. (ECF No. 11 at PageID.50.) Plaintiff responds that he alleges that COs were aware of Perry's violent history and contends that, if discovery shows Perry had actually killed a fellow inmate, Defendants could not plausibly deny knowledge of Perry's history. Plaintiff also cites the unexpected nature of the transfer, the temporal proximity between his article and the transfer, and Sprague's statement about having a cell for Plaintiff as further supporting an inference that Sprague knew about Perry's history. (ECF No. 17 at PageID.77.)

As an initial matter, Plaintiff may not speculate about what discovery might show to defeat Defendants' motion to dismiss. The Sixth Circuit has squarely rejected the notion that discovery can fill a factual void left by conclusory allegations. *See Kolley v. Adult Prot. Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment.") (citing *Twombly*, 550 U.S. at 558–59). Moreover, the Supreme Court has directed district courts not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

That being said, I find the issue close. On the one hand, Plaintiff's factual allegations concerning Sprague's awareness of Perry's history are rather sparse. Plaintiff's essential premise seems to be that all COs in a facility would be familiar with a prisoner who had previously murdered another prisoner, but this is nothing more than speculation, particularly given the large number of inmates housed at MDOC facilities at any given time. It is also worth noting that Plaintiff's article expressly criticized COs who had come to MTU after Michigan Reformatory closed; thus, COs such as Sprague would not necessarily be familiar with the prisoner population

10

at MTU. In addition, Plaintiff does not allege that COs such as Sprague have authority to determine prisoner cell assignments or could have influenced or determined Plaintiff's assignment with Perry. On the other hand, given the close temporal proximity between Plaintiff's article and the cell transfer (one day), the unexpected nature of the transfer, and Sprague's comment that he had a cell for Plaintiff in response to the other officer's mention of Plaintiff's article, I find Plaintiff has alleged enough factual matter to create a plausible inference that Sprague was aware of Perry's history. Therefore, I recommend that the motion be denied as to CO Sprague.

### b. COs Finney and Fleck

In contrast to CO Sprague, Plaintiff's allegations as to Defendants Finney and Fleck fail to create a plausible inference that they were aware of Plaintiff's protected conduct or Perry's history. Plaintiff's sole allegation relating to these Defendants' knowledge is that "[o]n information and belief, COs who had interactions with [Plaintiff] were aware of the article and discussed the article with each other." (ECF No. 1 at PageID.3.) But Plaintiff's naked "information and belief" allegations are not sufficient to satisfy the *Twombly*/*Iqbal* standard with regard to Defendants Finey and Fleck. "[C]omplaints grounding claims on 'information and belief' can survive a motion to dismiss," if they "'set forth a factual basis for such belief[.]" *Smith v. General Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006)); *see also Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 837 n.10 (N.D. Ohio 2021) ("Factual allegations based upon information and belief may be sufficient to support a plausible claim for purposes of Rule 12(b)(6) analysis where the factual allegations in the entire pleading allow the Court to draw the reasonable inference that defendant is liable for the conduct alleged."). The complaint lacks this level of support as to COs Finney and Fleck.

Plaintiff contends that his allegations that five COs at MTU indicated their awareness of Plaintiff's article within two days of its publication creates a plausible inference that all COs at MTU discussed Plaintiff's article rather than finding it through their own independent efforts on the Prisonreports.org website. (ECF No. 17 at PageID.76.) But contrary to Plaintiff's argument, the complaint does not allege that five COs were aware of the article within two days of its publication on the internet. Rather, paragraph 12 alleges that Defendant Jones made a remark about the article to Plaintiff "at some point" and that two other unidentified COs made a remark, but it does not say when their remarks were made. (ECF No. 1 at PageID.3.) Moreover, even if five COs—who may have worked on different shifts or in different parts of MTU than Finney and Fleck—had mentioned Plaintiff's article to him within two days of its publication, such an allegation is still too speculative to show that Defendants Finney and Fleck were aware of Plaintiff's protected conduct, and Plaintiff offers no non-speculative basis to show that they were aware of Perry's assaultive history. Last, in connection with his response to Defendants' argument that COs Finney, Fleck, and Jones were not involved in transferring Plaintiff to Perry's cell, Plaintiff argues that their indifference to Perry's assaults on Plaintiff and refusals to transfer him out of Perry's cell "certainly indicates complicity in the transfer, and a deliberate choice to keep [Plaintiff] housed with Perry." (ECF No. 17 at PageID.79.) As noted above, "defendants are not responsible for adverse actions that they do not cause[.]" *LaFountain*, 716 F.3d at 949. There is no fact suggesting that Finney, Fleck, or Jones were involved in any way in the transfer. As for refusing Plaintiff's request to transfer to a different cell, this alone does not demonstrate Defendants' knowledge that Plaintiff's transfer into Perry's cell was retaliatory or that continuing to house him with Perry was part of a retaliatory scheme.

c.     CO Jones

As for CO Jones, Plaintiff alleges that "at one point" he remarked to Plaintiff that he had read Plaintiff's article. (ECF No. 1 at PageID.12.) Defendants contend that this non-specific allegation is insufficient to support a plausible claim that Jones knew about the article at the time of Plaintiff's transfer or when Plaintiff told CO Jones that he was concerned about his safety after being moved to Perry's cell. I find this argument persuasive. First, as discussed above regarding COs Finney and Fleck, Plaintiff alleges no fact suggesting that Jones was involved in the transfer. And as to refusing to move Plaintiff, Plaintiff's non-specific allegation about Jones's remark is insufficient to show that Jones was aware of Plaintiff's protected activity when Plaintiff spoke to him about Perry. In fact, the timing of Jones's alleged remark to Plaintiff is a fact within Plaintiff's own knowledge, such that he would be able to allege it in his complaint to establish a causal connection for Jones. Therefore, I recommend that CO Jones be dismissed from the retaliation claim.

C.     **Excessive Force Claim**

Defendants do not argue that Plaintiff does not sufficiently allege an excessive force claim against *some* CO. Rather, they contend that the claim is subject to dismissal because Plaintiff does not allege that COs Jones, Dobias, and Lien discharged the pepper spray at Plaintiff or ordered or acquiesced in its deployment. (ECF. No. 11 at PageID.53–54.) Thus, Defendants contend that Plaintiff fails to allege that they personally used excessive force against Plaintiff.

Plaintiff responds that he was unable to allege who used the pepper spray because all of the COs (including the two not named as Defendants) were masked when the pepper spray was deployed and he was unable to determine who deployed it. Plaintiff contends that this case is similar to *Batson v. Hoover*, 788 F. App'x 1017 (6th Cir. 2019), in which the plaintiff was unable

to determine which of two officers slammed him into doors and walls as they walked him to a solitary confinement cell because he had been blinded by pepper spray. *Id.* at 1019. On appeal of the district court's denial of qualified immunity at the summary judgment stage, one of the defendants argued that the plaintiff could not prove that he violated the plaintiff's constitutional rights because the plaintiff was unable to show that the defendant was involved in the alleged excessive force. *Id.* at 1020. The court disagreed, noting that "summary judgment may not be warranted when the plaintiff, because of circumstances beyond his control, is unable to identify the officer." *Id.* The court observed, "[i]n these circumstances, if the plaintiff is unable to definitively identify which officer committed allegedly unconstitutional acts, a plaintiff may nonetheless survive summary judgment when he introduces sufficient evidence to place the officer at the scene." *Id.* (citing *Fazica v. Jordan*, 926 F.3d 283, 290 (6th Cir. 2019).

Although *Batson* was a summary judgment case, the Sixth Circuit has applied the same principle at the motion to dismiss/judgment on the pleadings stage. *See Greer v. City of Highland Park*, 884 F.3d 310 (6th Cir. 2018). The plaintiffs in *Greer* alleged that a group of police officers wearing swat gear and face masks violated their Fourth Amendment rights by either serving an invalid search warrant or improperly executing a valid warrant. *Id.* at 314. In support of their Rule 12(c) motion raising qualified immunity, the officers argued that the plaintiffs failed to state a plausible Fourth Amendment violation because they failed to specify in their complaint the actions each officer took during execution of the warrant. The court rejected the argument, noting that "courts are disinclined to dismiss complaints that fail to allege specific conduct by each officer when the officers' actions have made them impossible to identify." *Id.* at 315–16 (citing *Burley v. Gagacki*, 729 F.3d 610, 622 (6th Cir. 2013)).

14

I find that the rule employed in *Batson* and *Greer* applicable here. Defendants' attempt to distinguish *Batson* is unconvincing. First, Defendants argue that *Batson* is a qualified immunity case, but this argument does not explain why *Batson* could not apply in these circumstances. Although Defendants have not raised qualified immunity in their motion to dismiss, the Sixth Circuit has observed, "asking whether there was a violation of a constitutional right resembles the Rule 12(b)(6) question—has the plaintiff pleaded facts that state a claim for relief in the complaint?" *Crawford v. Tilley*, 15 F.4th 752, 764 (6th Cir. 2021). And in *Greer*, the court applied the identification rule in addressing whether the plaintiffs had a plausible Fourth Amendment violation, 884 F.3d at 315–16, similar to the inquiry here.

Next, Defendants argue that *Batson* is distinguishable because the plaintiff in that case alleged alternative bases for liability, excessive force and failure to intervene, whereas here, Plaintiff alleges only use of excessive force. But the court in *Batson* merely observed that because the defendant admitted he was one of the officers who escorted the plaintiff, a jury could find that the defendant was liable for the alleged constitutional violation either by using excessive force or by failing to intervene. Nothing in *Batson* suggests that a plaintiff must allege a companion failure to intervene claim for the rule pertaining to inability to identify officers at the scene of a constitutional violation to apply, and it is important to bear in mind that *Batson* was a summary judgment case. Here, Plaintiff alleges that all five COs in the segregation shower were wearing masks. Thus, as Plaintiff argues, while he might have been able to see which CO sprayed the pepper spray, he could not identify the specific individual due to the mask. *See Greer*, 884 F.3d at 313, 315–16 (plaintiffs' inability to specify the actions each officer took due to face masks did not warrant dismissal at the Rule 12(c) stage).

Thus, I recommend that the motion be denied as to the Eighth Amendment claim.

### D. Defendant Proctor

Defendants argue that Defendant Proctor should be dismissed from this action because the complaint does not allege that he retaliated against Plaintiff or used excessive force on him. (ECF No. 11 at PageID.56.) Indeed, Neither Count I nor Count II identify Proctor as having violated Plaintiff's constitutional rights. Although Count II mentions Proctor, it does not allege that he was present in the shower or used pepper spray on Plaintiff. In response, Plaintiff points to his allegation in paragraph 38 that Proctor stated in the misconduct report relating to the shower incident that Plaintiff refused to follow orders and did not take his clothes off. Plaintiff argues that because Proctor provided information as to what occurred in the shower, it is plausible that he was a participant. (ECF No. 17 at PageID.82.) While this may be so, Count II does not allege that he was present or sprayed pepper spray in the segregation shower. Accordingly, I recommend that the motion be granted as to Defendant Proctor.

### IV. Conclusion

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss (ECF No. 10) be **granted in part and denied in part** as follows: (1) **deny** the motion as to the retaliation claim against Defendant Sprague, but **grant** it as to the retaliation claim against Defendants Finney, Fleck, and Jones; (2) **deny** the motion as to the Eighth Amendment claim against Defendants Jones, Lien, and Dobias; and (3) **grant** the motion as to Defendant Proctor.

Dated: December 10, 2025     /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).