UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIUS BUCKLEY,

    Plaintiff,

                                    Case No. 1:25-cv-470

v.

                                    Hon. Hala Y. Jarbou

UNKNOWN FINNEY, et al.,

    Defendants.

_____/

## **ORDER**

Plaintiff Demetrius Buckley is a state prisoner who brought this action against corrections officers working for the Michigan Department of Corrections (MDOC).  Among other things, he contends that one of those officers, Defendant Sprague, retaliated against him for writing an article in a prison publication by transferring Buckley to a cell with a volatile inmate and by refusing to move Buckley out when he complained about that placement.  Sprague filed a motion for summary judgment, arguing that Buckley failed to exhaust his administrative remedies as to this claim.  On June 8, 2026, Magistrate Judge Sally J. Berens issued a Report and Recommendation (R&R) that the Court grant the motion and dismiss Sprague.  (R&R, ECF No. 57.)  Before the Court are Buckley's objections to the R&R.  (Objs., ECF No. 62.)  For the reasons herein, the Court will overrule the objections and adopt the R&R.

Under Rule 72 of the Federal Rules of Civil Procedure,

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

As discussed in the R&R, none of the grievances filed and exhausted by Buckley made the assertion that Sprague had retaliated against Buckley with regard to the cell placement. As a general matter, "[t]he issues [Buckley] may raise . . . in his lawsuit are limited to the specific issues raised . . . in his grievance." *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002). The closest grievance in evidence is "the 0671 Grievance addressing Plaintiff's request to be moved out of the cell with prisoner Perry," which asserts that Sprague refused to move Buckley, saying he "found" that cell for Buckley. (*See* R&R 5; 0671 Grievance, ECF No. 52-2, PageID.315.) But that grievance does not contend that Sprague acted out of retaliatory animus. (*See* R&R 6.) And while Buckley claimed in his Step II appeal that he "had been retaliated against by staff," that assertion did not cure his failure to raise the retaliation issue at Step I of the grievance process because prisoners generally cannot raise new issues at Step II or Step III of the grievance process. *See Dykes v. Fuller*, No. 19-2243, 2020 WL 6257023, at *3 (6th Cir. July 10, 2020) ("[A] prisoner 'cannot raise a new issue in a grievance appeal and have it be deemed exhausted, unless the MDOC proceeded to address that new claim on the merits.'" (quoting *Newson v. Steele*, No. 09-10346, 2010 WL 3123295, at *5 (E.D. Mich. July 1, 2010))). Here, the MDOC did not address any retaliation claim on the merits.

In his objections, Buckley argues that his Step I grievance, when read liberally, sufficed to give prison officials fair notice of his retaliation claim. The Court disagrees. The grievance does indicate that Sprague personally selected the cell for Buckley, that Sprague may have done so knowing that Perry was violent toward cellmates, and that Sprague refused to move Buckley out of the cell. But nothing in the grievance suggests that Sprague acted out of a retaliatory motive. Instead, it simply suggests that Sprague may have intentionally subjected Buckley to a risk of harm. The motive for that behavior is not apparent. *See Keel-Haywood v. Toogood*, No. 1:24-cv-

2

303, 2025 WL 1732835, at *2 (W.D. Mich. June 23, 2025) (failure to disclose retaliatory animus did not provide fair notice of retaliation claim); *Dykes v. Fuller*, No. 18-CV-11528, 2019 WL 4744433, at *5 (E.D. Mich. Sept. 30, 2019) ("[E]ven when liberally construed, neither the Step I False Misconduct Report Grievance nor the Step I Pay Grievance suggests that Defendants committed the complained-of misconduct in retaliation for Dykes' prior grievances.  Indeed, neither of those Step I grievances mentions any earlier conduct by Dykes at all.").

Buckley makes a similar argument about his Step II grievance appeal, which adds the word "retaliation."  Buckley contended in his appeal that he requested to be moved out of the cell with Perry but the officers "didn't care for me or my bunky's safety."  (Step II Appeal, ECF No. 52-2, PageID.314.)  After describing Sprague and two other officers' refusals to move Buckley out of the cell, Buckley asserted that he was "struck by my bunkie, gassed, and had been retaliated against by staff."  (Step II Appeal, ECF No. 52-2, PageID.314.)  But a lack of concern for Buckley's safety is altogether different from intentionally putting Buckley at risk as a way to retaliate for Buckley's protected conduct, which is the basis for his retaliation claim.  Indeed, Buckley also contended in his Step II appeal that "[t]he issue [he was] addressing in Step I is deliberate indifference," which is not the same as intentional retaliation.  (*Id.*)  Also, it is unclear from the Step II appeal form what Buckley meant when he said he "had been retaliated against by staff."  He does not indicate who retaliated against him, how they did so, or what protected conduct would have motivated that retaliation.  Thus, it would not have been apparent to a prison official reviewing the grievance appeal that Buckley was complaining that Sprague had intentionally retaliated against him by putting him in the cell with Perry or by refusing to remove him from that cell.  In other words, no reasonable jury could find that the 0671 grievance, even when considered together with the Step II grievance appeal, exhausted Buckley's retaliation claim.

Buckley argues that a grievance appeal can supply additional details necessary to exhaust a claim, citing *Mattox v. Edelman*, 851 F.3d 583 (6th Cir. 2017).  There, the prisoner complained in his Step I grievance that an unnamed medical provider had contributed to the denial of his medication.  He later clarified the identify of that individual in his Step II appeal.  *Id.* at 597.  The Sixth Circuit concluded that a reasonable jury could find that "this information was sufficient under the circumstances" to satisfy the MDOC's rules about naming the individual being grieved. *Id.*  Buckley's case is distinguishable.  His appeal did not provide an additional fact that merely clarified the identity of the individual being grieved.  Nor did it clarify that Buckley was asserting that Sprague had acted with retaliatory animus.  Instead, his appeal purported to assert a deliberate indifference claim, which is not the same claim he raises in this case.  Although the appeal mentioned retaliation, it did so only in passing and provided no clarity on the nature of that claim. Thus, Buckley's argument is unpersuasive.

For similar reasons, Buckley's reliance on *Doe v. Anderson*, No. 15-13852, 2017 WL 4684614 (E.D. Mich. Oct. 18, 2017), is misplaced.  That court concluded that a grievance about the destruction of property by one officer sufficed to put other prison officers on notice of a retaliation claim against them because the prison's grievance response asserted that these other officers were the ones who worked the shift when the incident occurred.  *Id.* at *6.  Buckley apparently argues that the grievance discussed in *Anderson* provided sufficient notice of a retaliation claim even though the grievance lacked any mention of retaliatory animus.  But that court did not discuss the contents of the grievance in any detail.  It simply concluded that a grievance against one official provided notice of a claim against others because the prison identified those other officials in its response.  Those circumstances are not present here.

In the *Anderson* case, the court also concluded that retaliation could be "read into" a grievance because the grievance "states that JD 8 was harassed because of people he associates with and because of his sexual orientation." *Id.* at \*12. The court thought these facts were sufficient to provide notice of the prisoner's claim that prison officials had retaliated against him for his participation in a class action lawsuit. Similarly, the court held that a different grievance could be "read to allege retaliation" because it stated that the prison official "referenced [the plaintiff's] assault and him being gay as the reasons for his alleged actions." *Id.* at \*16. But unlike those grievances, Buckley's 0671 grievance and Step II grievance appeal provided no details suggesting that Sprague's actions stemmed from an improper, retaliatory motive. Thus, the grievances in *Anderson* are distinguishable.

Buckley also relies on other grievances and grievance appeals he filed that mentioned retaliation, arguing that these other documents provided sufficient notice of his retaliation claim against Sprague when considered alongside the 0671 grievance and Step II appeal. One of these documents, an appeal for a different grievance, has nothing to do with Sprague or the claim at issue in the complaint; it asserts that "[r]eporting sexual misconducts on officials is scary because of the retaliatory nature which has been ongoing." (0670 Step II Appeal, ECF No. 52-2, PageID.317.)

Another grievance and grievance appeal assert that Sprague searched Buckley's cell and scattered his legal papers in September 2023 in retaliation for Buckley's grievances against Sprague. (0674 Grievance, ECF No. 52-2, PageID.308; 0674 Step II Appeal, ECF No. 52-2, PageID.306.) Those assertions would not have provided fair notice that Sprague had placed Buckley in a cell with Perry in August 2023 in retaliation for Buckley's prison article. Sprague's

5

asserted conduct and motive in September 2023 were different from the conduct and the motive in August 2023 that are alleged in the complaint.

In the same vein, Buckley relies on his response to a misconduct investigation for a misconduct ticket issued at the end of August 2023, in which Buckley asserted that an officer told him that "none of the officers liked [him] because [he] reported on their actions against inmates through articles."  (Misconduct Hearing Investigation Rep., ECF No. 54-1, PageID.341.)  Even when considered with Buckley's grievances, however, that statement would not have provided notice of a retaliation claim against Sprague regarding the cell placement.  The statement does not mention either Sprague or the cell placement.  Moreover, the Court agrees with the magistrate judge that Buckley's argument for relying on the misconduct documents is legally unsupported; he cites "no pertinent authority for this type of piecemeal approach to exhaustion comb[in]ing grievance statements with misconduct reports."  (R&R 8.)

Buckley cites *White v. Goodell*, No. 2:17-CV-99, 2021 WL 1152891 (W.D. Mich. Mar. 26, 2021), but that case does not help his argument.  In *White*, the court considered whether the plaintiff had raised the issue of retaliation in a misconduct hearing.  But that inquiry was necessary at the time because prisoners who challenged a misconduct ticket, including a challenge contending that the ticket was retaliatory, were *required* to exhaust their claim by raising the issue at the misconduct hearing.  *See Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) (citing MDOC Policy Directive 03.02.130); *accord  Rush v. Newcomb*, No. 19-2013, 2020 WL 5270438, at *2 (6th Cir. July 8, 2020); *Smith v. Pallas*, No. 18-1933, 2019 WL 7946345, at *3 (6th Cir. Nov. 7, 2019).[1]  For other issues unrelated to misconduct proceedings, the grievance process was the

---

[1] In September 2023, the MDOC updated its grievance policy to allow prisoners to use the grievance process to challenge retaliatory misconduct tickets.  *See Kitchen v. Welicki*, No. 25-cv-10547,  2026 WL 297211, at *2 (E.D. Mich. Feb. 4, 2026).

appropriate method of exhaustion.  In other words, *White* did not hold that a court can mix and match grievances and other communications to prison officials in order to determine whether a prisoner has properly exhausted a claim.  Instead, it held that a court could look at the misconduct process to determine whether a prisoner had exhausted a claim related to the misconduct process, where prison policy required exhaustion through the misconduct process.  Buckley's claim at issue here does not involve the misconduct process, so *White* does not apply.

Finally, Buckley cites *Kennedy v. Curtis*, No. 19-13210, 2021 WL 5104577 (E.D. Mich. Nov. 3, 2021), in which the court considered two grievances together to determine whether the prisoner had exhausted a retaliation claim.  In one grievance, the prisoner asserted that he had not been placed in a desirable unit in retaliation for being found not guilty on a misconduct ticket issued by the defendant.  *Id.* at *2.  In a different grievance, he asserted that the defendant had falsified the misconduct ticket.  *Id.*  The court held that these two grievances were sufficient to put the defendant on notice of the plaintiff's claim that the defendant retaliated by issuing the misconduct ticket.  *Id.*  Like the magistrate judge, this Court is not persuaded by the logic in *Kennedy*, which cited no authority for its approach.  Indeed, the two grievances in *Kennedy* concerned different conduct occurring at different times by different officials.  There is no reason why a prison official reading those two grievances would assume that the retaliation occurring after the misconduct ticket applied to the ticket itself.  Likewise, there would be little reason for a prison official reviewing Buckley's various grievances to make the inference that Sprague had acted with a retaliatory motive when placing Buckley in the cell with Perry or when refusing to move him out of it.

Moreover, Buckley's approach is inconsistent with the grievance process and would not serve the purpose of the exhaustion requirement.  The MDOC's grievance process requires

7

prisoners to first resolve "*the* issue with the staff member involved within two business days after becoming aware of *the* grievable issue."  MDOC Policy Directive 03.02.130 ¶ Q (emphases added).  Within five business days thereafter, the prisoner may file a Step I grievance about that particular issue with the "[d]ates, times, places, and names of all those involved in the issue being grieved."  *Id.* ¶¶ R, S.  If the prisoner is not satisfied with the resolution of that issue at Step I, the prisoner can proceed to Steps II and III.  This process focuses the prison's attention on a single issue so that it can potentially address the issue before it becomes the subject of litigation.  *See id.* ¶ J(1) (providing that a grievance may be rejected if it contains "multiple unrelated issues").  Under Buckley's approach, however, prison officials would be expected to know about all the grievances that have been filed, and to make generous inferences about possible connections between them, when considering how to address any one issue.  That approach is hard to reconcile with a grievance process that is designed to focus on one issue at a time.  Also, it would significantly hinder the ability of the prison to discern and respond to relevant issues before they become the basis for a lawsuit.

In short, the Court is not persuaded that there is any error in the recommended disposition of Defendant's motion.  Accordingly,

**IT IS ORDERED** that the Report and Recommendation (ECF No. 57) is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendant Sprague's motion for summary judgment (ECF No. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Sprague is **DISMISSED** from the case without prejudice due to Plaintiff's failure to exhaust his administrative remedies.

Dated: July 29, 2026 /s/ Hala Y. Jarbou

HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE